**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

VIVEK MADHAVAN,

*Plaintiff*,

v.

MARY ELIZABETH BRENNAN SENG, *et al.*

*Defendants*.

Case No. 26-cv-1215-ABA

## MEMORANDUM OPINION

Vivek Madhavan challenges the denial of his petition for classification as a noncitizen of extraordinary ability. In so doing, he challenges both the validity of the national policy that U.S. Citizenship and Immigration Services ("USCIS") applied in denying that petition, and its application of that standard to his petition. Defendants Mary Elizabeth Brennan Seng and Joseph B. Edlow, sued in their official capacities, move to transfer this action to the Northern District of California or, alternatively, the Northern District of Texas. ECF No. 5. They also seek an extension of time to respond to the complaint. For the following reasons, the Court will grant the request to transfer and the requested extension.

## I. BACKGROUND

The Immigration and Nationality Act provides an employment-based immigrant classification for noncitizens with "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation." 8 U.S.C. § 1153(b)(1)(A). This classification is commonly called EB-1A. The statutory provision was interpreted and implemented by

USCIS by regulation, which lays out specific standards and a procedure for determining whether a person is eligible for an "extraordinary ability" visa. That regulation, which USCIS adopted in 1991, requires either a qualifying one-time achievement or evidence satisfying at least three of ten enumerated categories. 8 C.F.R. § 204.5(h)(3); 56 Fed. Reg. 60,897 (Nov. 29, 1991).

In addition to the regulation, on December 22, 2010, USCIS issued what has since come to be known as the "Kazarian policy." ECF No. 1 ¶ 2; ECF No. 1-2 at 12.[1] The name refers to *Kazarian v. U.S. Citizenship & Immigration Services*, in which the Ninth Circuit upheld the denial of an EB-1A petition but concluded that the agency had erred in evaluating whether the petitioner's evidence satisfied the regulatory criteria. 596 F.3d 1115, 1121–22 (9th Cir. 2010). The memorandum setting out the policy adopted what it called "the *Kazarian* court's two-part adjudicative approach." ECF No. 1-2 at 14. It instructs adjudicators first to determine whether a petitioner's evidence satisfies the regulatory criteria and then, in a "final merits determination," to consider all of the evidence together in deciding whether the petitioner has the high level of expertise that the classification requires. *Id.* at 14–15.

Madhavan resides in Fremont, California. ECF No. 1 at 1. He filed an EB-1A Form I-140 petition on June 30, 2025. ECF No. 1-2 at 3. Madhavan is an engineer, and his petition invoked five of the ten regulatory criteria: his authorship of scholarly articles, his high salary, his judging of others' work, his leading or critical roles for distinguished organizations, and his original contributions to the field, chiefly through his role in three projects at Meta. *Id.* at 4–9. USCIS's Texas Service Center denied the petition on

---

[1] Citations to page numbers refer to the pagination generated by the Court's electronic filing system, which may differ from the pagination of the underlying documents.

November 3, 2025. ECF No. 1 ¶¶ 1, 6; ECF No. 1-2 at 2. According to the complaint, USCIS found that Madhavan satisfied four of the regulatory criteria but concluded, through a subsequent final merits determination, that he had not established the level of expertise required for the classification. ECF No. 1 ¶¶ 6, 16. Madhavan attributes that second stage of review to the "Kazarian policy." *Id.* ¶¶ 2, 21–24. The complaint asserts three claims under the Administrative Procedure Act ("APA"), each challenging the Kazarian policy as applied to Madhavan's petition or on its face. ECF No. 1 ¶¶ 25–42. Madhavan seeks relief concerning his petition and a declaration that the policy is unlawful, together with an order setting it aside. *Id.* at 13.

Defendants move to transfer under 28 U.S.C. § 1404(a). ECF No. 5. They emphasize that Madhavan resides in the Northern District of California, that the Texas Service Center, which adjudicated his petition, is located in the Northern District of Texas, and that the administrative records associated with that adjudication are located there. ECF No. 5-1 at 2–6. In their view, USCIS's headquarters supplies the only connection to Maryland, and the convenience of the parties and witnesses and the interest of justice favor one of the proposed transferee districts. *Id.* at 4–8.

Madhavan agrees that he could have brought this action in either proposed district. ECF No. 6 at 2, 4–5. He argues, however, that his claims primarily challenge the legality of an identified national policy and should proceed in the district where USCIS is headquartered. *Id.* at 2–6, 9–11. (USCIS moved from Washington, D.C. to Camp Springs, Maryland, in 2020. *See* ECF No. 1 ¶ 13.) He also contends that the predominantly legal nature of the dispute substantially reduces the importance of the location of witnesses and records. *Id.* at 3–4, 7–8. Defendants reply that although Madhavan purports to challenge USCIS's December 22, 2010, policy, at bottom

Madhavan's claims require deciding whether he has shown that USCIS acted arbitrarily and capriciously in deciding that he did not qualify as possessing the type of "extraordinary ability . . . demonstrated by sustained national or international acclaim and . . . recognized in the field through extensive documentation" as required by 8 U.S.C. § 1153(b)(1)(A). Defendants contend that because Petitioner's personal claim has no connection to Maryland beyond the location of USCIS headquarters, the case should not remain in Maryland. ECF No. 7 at 3–9.

## II. LEGAL STANDARD

In an action against federal officers sued in their official capacities, venue lies in any district where a defendant resides, where a substantial part of the events or omissions giving rise to the claim occurred, or where the plaintiff resides if no real property is involved. 28 U.S.C. § 1391(e)(1). Even where venue is proper, a court may transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice," to any other district "where it might have been brought." *Id.* § 1404(a); *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). That decision requires an individualized assessment of convenience and fairness, taking into account the circumstances of the particular case. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988).

A party moving to transfer under § 1404(a) "bears the burden to establish both (1) that the plaintiff could have brought the action in the proposed transferee court and (2) that the action should have been brought there." *Manne v. Jaddou*, No. 21-cv-1092-PJM, 2022 WL 102853, at *6 (D. Md. Jan. 11, 2022); *see also Karaoglu v. U.S. Dep't of Homeland Sec.*, No. 23-cv-749-DKC, 2023 WL 4627277, at *2 (D. Md. July 19, 2023). On the second question, courts consider four factors: the weight accorded to the

plaintiff's choice of forum, witness convenience and access, the convenience of the parties, and the interest of justice. *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Because a plaintiff's choice of forum ordinarily receives substantial weight, the movant "must show by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Corcoran v. Peleus Ins. Co.*, No. 20-cv-1115-TDC, 2021 WL 3472664, at *4 (D. Md. Aug. 6, 2021) (citation omitted).

## III. ANALYSIS

### A. Motion to Transfer

Defendants have shown that this case should proceed in the Northern District of California or the Northern District of Texas rather than here. Madhavan's choice of forum would ordinarily receive substantial weight, but that weight is diminished where, as here, the forum is not the plaintiff's home and has little connection to the claims. *See Trs. of the Plumbers*, 791 F.3d at 444; *Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 269 (D.D.C. 2018); *Chenari v. U.S. Citizenship & Immigr. Servs.*, No. 23-cv-1649-TJS, 2024 WL 895111, at *2 (D. Md. Mar. 1, 2024). Madhavan contends that USCIS acted arbitrarily and capriciously in concluding that he does not qualify for the EB-1A classification under 8 U.S.C. § 1153(b)(1)(A). *See* ECF No. 1-2 at 7–9. The Kazarian policy matters to him because USCIS applied it in denying *his* petition in particular, and most of the relief he seeks concerns that petition, including an order directing USCIS to reopen and approve it. ECF No. 1 at 13. *That* dispute arose in the Northern District of Texas and concerns a resident of the Northern District of California.

The policy challenge itself does not connect this case to Maryland. The memorandum establishing the two-step approach was issued from Washington, D.C. in 2010, a decade before USCIS moved its headquarters here. ECF No. 1-2 at 12; ECF No. 6 at 6, 9. Maryland's only tie to the case is that USCIS headquarters has been located in Camp Springs, Maryland since 2020 and thus the USCIS Director, sued in his official capacity, is located here. ECF No. 1 ¶ 13. Several other judges of this Court have concluded that USCIS's headquarters does not, without more, warrant litigating here a challenge to an immigration decision made elsewhere, even when the plaintiff attributes that decision to headquarters policy. *See, e.g.*, *Bulut v. U.S. Dep't of Homeland Sec.*, No. 23-cv-995-PX, 2023 WL 5153638, at *1 (D. Md. Aug. 9, 2023) (transferring action alleging delay "on account of policies made and issued from USCIS headquarters"); *Karaoglu*, 2023 WL 4627277, at *3; *Manne v. Jaddou*, No. 21-cv-1092-PJM, 2022 WL 102853, at *8 (D. Md. Jan. 11, 2022) ("[C]ourts routinely grant motions to transfer in cases like the one at hand where the only connection to the district is the location of a federal agency's headquarters") (citations omitted); *Chakrabarti v. U.S. Citizenship & Immigr. Servs.*, No. 21-cv-1945-PJM, 2021 WL 4458899, at *4 (D. Md. Sept. 29, 2021). And a contrary rule would mean that, by naming high-level officials as defendants, "a plaintiff could bring a suit here that properly should be pursued elsewhere." *Aishat*, 288 F. Supp. 3d at 269 (quoting *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993)). "The decision-making process for adjudicating [immigration] applications occurs at USCIS's service centers and field offices throughout the country, not at agency headquarters in Maryland." *Chakrabarti*, 2021 WL 4458899, at *6.

Madhavan relies principally on *Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41 (D.D.C. 2011). *Ravulapalli* declined to transfer a challenge to USCIS policies to the

Northern District of Texas because the claims primarily concerned policies issued from USCIS headquarters and Texas had "no particular localized interest in this litigation." *Id.* at 55–56. That reasoning does not carry over here. Most importantly, the *Ravulapalli* plaintiffs lived near the District of Columbia, while Madhavan lives in Fremont, California. ECF No. 1 at 1. Moreover, both decisions that were challenged in *Ravulapalli* arose in the District of Columbia while USCIS was headquartered there, and in *Ravulapalli* the challenged policies had issued from that headquarters, whereas the policy Madhavan challenges was adopted when USCIS was headquartered in Washington, D.C. ECF No. 1-2 at 12. In any event, to the extent *Ravulapalli* could be read to support keeping this case here, the Court is persuaded by the weight of the authority discussed above, including *Aishat*, which transferred a case centered on a USCIS office's handling of the plaintiff's own application. 288 F. Supp. 3d at 269–71.

The remaining factors are neutral or favor transfer. APA review is generally confined to the administrative record, so witness convenience carries little weight. *Camp v. Pitts*, 411 U.S. 138, 142 (1973). But that makes the factor neutral at most, and to the extent the location of the record matters, Madhavan's petition was adjudicated at the Texas Service Center. ECF No. 1-2 at 2; ECF No. 5-1 at 5–6. That a hearing may be unnecessary or could be held remotely likewise does not make Maryland more convenient than Madhavan's home district. *See Aishat*, 288 F. Supp. 3d at 270. And the interest of justice favors a forum with a genuine connection to the dispute: California has an interest in its resident's challenge to the denial of an immigration benefit, and Texas in review of an adjudication made there. *See id.* at 271.

Because both proposed districts have a substantially greater connection to this dispute than Maryland does, and neither has a clear advantage over the other, the Court

will let Madhavan choose between them. *See Karaoglu*, 2023 WL 4627277 at *3 ("deferr[ing] decision on *where* to transfer a case pending plaintiff informing the court which of two potential transfer destinations "would be a more convenient forum for him"). Madhavan shall file a notice of his choice and the reasons for it within fourteen days. If he does not, the case will be transferred to the Northern District of California, where he resides and which Defendants proposed first.

### B. Request for Extension of Time

Defendants ask that, if the case is transferred, their deadline to respond to the complaint be extended to sixty days after the case is docketed in the transferee district. ECF No. 5-1 at 8; ECF No. 7 at 10. Defendants made that request before their response deadline, *see* Fed. R. Civ. P. 12(a)(2); ECF Nos. 1, 5, and Madhavan has not separately opposed it, *see* ECF No. 6; ECF No. 7 at 10. The Court therefore finds good cause to grant Defendants' request and extend the time to respond to the complaint.

## IV. CONCLUSION

For these reasons, Defendants' motion to transfer and for an extension of time (ECF No. 5) will be granted. Madhavan shall, within fourteen days, file a notice electing transfer to the Northern District of California or the Northern District of Texas and stating the reasons for that choice. Absent a timely notice, the case will be transferred to the Northern District of California. Defendants shall answer or otherwise respond to the complaint within sixty days after the case is docketed in the transferee district. A separate order follows.

Date: November 4, 2026

*/s/*
Adam B. Abelson
United States District Judge